(67 Misc. Rep. 327.)

### BINNS v. VITAGRAPH CO. OF AMERICA.

(Supreme Court, Special Term, New York County. April, 1910.)

INJUNCTION (§ 96*)—UNLAWFUL USE OF NAME AND PICTURE—"TRADE."

Defendant, without plaintiff's written consent, used plaintiff's name in circulars issued for the purpose of putting on the market a photographic film representing plaintiff in the uniform of a wireless telegraph operator, which film purported to represent the wreck of a vessel, of which plaintiff was wireless operator. The films were leased by defendant for a stipulated price to moving picture exchanges for reproduction and exhibition to the public. Held, that plaintiff could enjoin such use of his name and picture, and recover damages therefor, under Civil Rights Law (Consol. Laws, c. 6) § 51, prohibiting the use for purposes of trade of the name, portrait, or picture of any living person without having first obtained the written consent of such person; such use being for the purpose of "trade" within the statute.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 167; Dec. Dig. § 96.*

For other definitions, see Words and Phrases, vol. 8, pp. 7037–7042.]

Action by John R. Binns against the Vitagraph Company of America to restrain use of plaintiff's picture. On motion to dismiss complaint. Motion denied.

A. F. Hansl, for plaintiff.
S. O. Edmonds, for defendant.

GUY, J. The plaintiff, an employé of the Marconi Wireless Telegraph Company, was, on January 23, 1909, in charge of the wireless apparatus on board the steamship Republic, which came in collision with another steamship. The summoning of assistance by means of the wireless "C. Q. D." message and the ultimate saving of all the passengers made the incident one of widespread notoriety and general

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

interest. The defendant, at the time of said occurrence, was engaged in the business of manufacturing, leasing, licensing, selling, distributing, displaying and circulating photographic films for use in motion picture machines; said films containing photographs or pictures of the actors engaged in representing the various scenes to which the films related.

About a month after the occurrence in question the defendant placed upon the market, by means of pamphlets issued to the moving picture trade, duplicate copies of a film purporting to represent scenes connected with the wreck of the Republic, which films were entitled "C. Q. D., or Saved by Wireless." Plaintiff's name was used on said films, and a pictorial representation of plaintiff arrayed in the uniform of a wireless operator. These films were leased for a stipulated price to various moving picture exchanges for reproduction and exhibition to the public. The plaintiff, not having given his written consent to the use of his name, portrait, or picture in such manner, brings suit under section 51 of the civil rights law (Consol. Laws, c. 6), formerly Laws 1903, c. 132, to restrain the defendant from so using them, and to recover damages for the unauthorized use already made thereof.

The statute in question prohibits the use for advertising purposes or for the purposes of trade of the name, portrait, or picture of any living person without having first obtained the written consent of such person. By way of defense the defendant contends that the use so made by it of plaintiff's name and the pictorial representation of plaintiff made by it did not constitute the use of plaintiff's name, portrait, or picture for advertising purposes or for the purposes of trade within the meaning of the statute, and urges that the films were furnished by the defendant to the various licensees for educational purposes, and as a means of disseminating news of current events. In my judgment this contention of defendant is not borne out by the evidence. It is true that the incident which defendant undertook to portray or reproduce had been a current event and an item of news in publications devoted to such purposes; but the films in question were manufactured by defendant a month after the occurrence, when it had ceased to be an item of current news, and were leased or sold to the moving picture trade, not as a means of general dissemination of news, but for a commercial purpose limited in character, which constituted "trade" within the meaning of the statute.

The character of defendant's business and of the films manufactured by it, which were evidently designed to amuse special audiences, rather than instruct and educate the general public, emphasizes this fact. It seems equally clear that the pamphlets sent out by the defendant in connection with the films in question, furnishing information to prospective licensees, in which pamphlets the statement was made that the films in question contained "actual pictures  *  *  * of Jack Binns, the wireless operator," and which contained pictures purporting to be of the plaintiff, constituted a use of plaintiff's name and picture for advertising purposes in contravention of the statute.

Defendant's motion to dismiss the complaint is therefore denied, and an interlocutory judgment directed in favor of the plaintiff, per-

manently preventing and restraining the defendant, its agents, servants, and representatives, from using pictures of the plaintiff, and from using plaintiff's name for purposes of trade or advertising; the amount of damages recoverable by plaintiff for injuries already sustained by the unauthorized use by defendant of his name and picture to be determined by a jury.

Motion denied.